**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02272-NYW

KATHLEEN R. HUNSAKER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

    This action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security's final decision denying Plaintiff Kathleen R. Hunsaker's ("Plaintiff" or "Ms. Hunsaker") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated July 14, 2015 [#19] and the Case Reassignment dated July 15, 2015 [#20], this civil action was referred to the Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. The court has carefully considered the Complaint [#1, filed Aug. 15, 2014], Defendant's Answer [#8, filed Feb. 2, 2015], Plaintiff's Opening Brief [#12, filed Apr. 6, 2015], Defendant's Response Brief [#13, filed May 6, 2015], the entire case file, the administrative record, and applicable case law. For the following reasons, I **AFFIRM** the Commissioner's final decision.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed an application for DIB under Title II of the Act and an application for SSI under Title VI of the Act on July 26, 2011. [#1 at ¶ 4]. Plaintiff claims that she was and continues to be disabled as a result of degenerative cervical disc disease and degenerative lumbar disc disease. [#1 at ¶ 4]. She dates her medical condition from 2001, and states that the pain in her neck and back significantly increased after an accident on October 19, 2001, when a company vehicle she was driving was struck from behind by a man riding a bicycle. [#12 at 7 (citing #9-8 at 313; #9-9 at 346)]. Her alleged onset of disability, May 20, 2011, is a decade later. [#9-5 at 163]. Plaintiff's DIB and SSI applications were denied in a notice dated February 13, 2012. [#9-3 at 98].[1] On April 16, 2012, Plaintiff filed a request for an administrative hearing. The hearing took place on March 12, 2013 before Administrative Law Judge ("ALJ") Lowell Fortune. [#9-2 at 36]. The ALJ issued a hearing decision on April 8, 2013, which denied the application for disability benefits at step four of the five-step sequence for determining disability. [#9-2 at 16]; *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps).

At step one, the ALJ determined that Ms. Hunsaker had not engaged in substantial gainful activity since May 20, 2011, the alleged onset date. [#9-2 at 21]. At step two, the ALJ found that Ms. Hunsaker "has the following severe impairments: degenerative cervical disc disease and degenerative lumbar disc disease." [#9-2 at 21]. The ALJ noted that Ms. Hunsaker

---

[1] This Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file. For the Administrative Record, the court then refers to the page number associated with the Record, which is found in the bottom right-hand corner of the page. For documents outside of the Administrative Record, the court refers to the page number assigned in the top header by the ECF system.

has alleged hypertension, but the ALJ found that to be a non-severe impairment because there is no evidence it imposes more than a minimal restriction in the ability to perform basic physical or mental work activities. [#9-2 at 21]. The ALJ also noted that the hypertension is controlled by medication and there is no evidence of secondary effects. [#9-2 at 21]. The ALJ acknowledged that Ms. Hunsaker also alleges fatigue and insomnia; however, the ALJ found these to not be medically determinable impairments, as there has been no medical work up or diagnosis of these complaints. [#9-2 at 21].

At step three, the ALJ found that Ms. Hunsaker did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [#9-2 at 23]. The ALJ noted that Ms. Hunsaker's degenerative lumbar and cervical disc disease does not meet or medically equal the criteria in listing 1.04 because there is no evidence of herniated disc or spinal stenosis, no evidence of nerve root compression, or muscle atrophy or weakness, or sensory or reflex loss. [#9-2 at 23]. The ALJ then concluded that Ms. Hunsaker had the residual functional capacity ("RFC") to perform a full range of sedentary work as defined in 20 CFR 404.1567(a), except that: (1) she is unable to lift/carry more than 10 pounds frequently and 10 pounds occasionally; (2) she is frequently able to push/pull or otherwise operate hand controls; (3) she can stand/walk 4 hours in an 8-hour workday, and sit 6-8 hours in an 8-hour workday; (4) she can frequently reach in all directions bilaterally, except occasionally reach overhead bilaterally; (5) she can frequently balance, bend, stoop, but never crouch or crawl; (6) she is able to climb ramps and stairs occasionally, but should not climb ladders, scaffolds, and ropes; and (7) she should not work at unprotected heights. [#9-2 at 23].

At step four, the ALJ concluded that Ms. Hunsaker is capable of performing her past relevant work as a marketing coordinator and executive assistant and that this work does not require the performance of work-related activities precluded by Ms. Hunsaker's RFC. [#9-2 at 30]. The ALJ thus concluded at step four that because Ms. Hunsaker can still perform her past relevant work, she must be found not disabled. [#9-2 at 30 (citing 20 CFR 494.1520)]. On June 13, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner. *See* [#9-2 at 2]; 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993). Plaintiff filed this action on August 15, 2014. *See* [#1]. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## LEGAL STANDARDS

### I. Standard of Review

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in

the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## II. Social Security Disability Appeal Process

An individual is eligible for DIB benefits under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. §§ 416(i), 423(a)(1). Supplemental Security Income is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

As discussed above, the Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not

necessary." *Id.* at 750. "Step one requires the agency to determine whether a claimant is 'presently engaged in substantial gainful activity.'" *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). Step two requires the agency to consider whether a claimant has "a medically severe impairment or impairments." *Allen*, 357 F.3d at 1142. "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). At step three, the ALJ considers whether a claimant's medically severe impairments "meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).

If the claimant's impairments are not equivalent to a listed impairment, at step four of the evaluation process, the ALJ must determine a claimant's RFC and compare the RFC to the claimant's past relevant work. The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and,

> consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work) . . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
> …
>
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain….

*Williams*, 844 F.2d at 751-52. If the ALJ finds that there is alternative work that exists in significant numbers in the local and national economies, then the claimant is determined to be not disabled and is not eligible for disability benefits. *See Klein v. Colvin*, 25 F.Supp.3d 1338, 1341 n.2 (D. Colo. 2014). The ALJ may rely upon the testimony of a vocational expert to satisfy his burden at step five, so long as the question posed to the vocational expert accurately portrays Plaintiff's limitations as supported by the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

## ANALYSIS

Ms. Hunsaker objects to the ALJ's decision on three grounds: (1) the ALJ used the wrong criteria to evaluate and weigh the expert opinions; (2) the ALJ erred in its determination regarding Ms. Hunsaker's credibility; and (3) the ALJ erred by failing to consider pain and other non-exertional factors in assigning Ms. Hunsaker to a Residual Functional Capacity. *See* [#12 at 4]. The court will address each of these objections in turn.

## I.    Plaintiff's Challenge of the ALJ's Criteria Used to Evaluate and Weigh the Expert Opinions

Plaintiff argues that the ALJ "used irrelevant and illogical criteria to evaluate and weigh the expert opinions," therefore "improperly nullif[ying] the 'treating physician rule,' and undermin[ing] the intent of 20 CFR § 404.1527(c)(2)." [#12 at 20]. Plaintiff presents three different theories of error, which the court will address in turn.

First, Plaintiff argues that the ALJ's opinion essentially eviscerated the "Treating Physician" rule because the ALJ improperly found the treating physicians' opinions to be inconsistent with other medical evidence in the record, where in reality those opinions were barely, if at all inconsistent. *See* [#12 at 21-22]. Plaintiff challenges the ALJ's use of record evidence that Plaintiff considers largely consistent with the treating physicians' opinions as a basis for finding a contradiction between those opinions and the substantial record evidence. In particular, Plaintiff alleges that "[t]he only conflict in the medical evidence between the state agency examiners and Ms. Hunsaker's treating physicians was the degree of severity of the disease and the extent to which it impaired Ms. Hunsaker's functioning." [#12 at 18].

"A treating physician's opinion must be given controlling weight if it 'is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.'" *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176-77 (10th Cir. 2014) (quoting *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, "the ALJ must explain what weight, if any, was assigned to the opinion 'using all of the factors provided in 20 C.F.R. §§ 404.1527 and

8

416.927.'" *Knight*, 756 F.3d at 1176-77 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Here, the ALJ considered all the medical evidence in the record and concluded that the "medical evidence [did] not suggest the types of abnormalities or ongoing treatment one would expect given [Plaintiff's] allegations of disabling symptoms, but rather show[ed] mild to moderate findings." [#9-2 at 25]. The ALJ then determined that the treating physicians' opinions were not entitled to controlling weight because they were not consistent with the other substantial evidence in the record. [*Id.* at 26]. The ALJ found that the state agency reviewing physicians' opinions that Ms. Hunsaker's limitations would not preclude the performance of substantial gainful activity constituted substantial evidence that was inconsistent with the treating physicians' opinions. [*Id.* at 26]. The ALJ also noted that the record discloses that a consultative examiner performed an examination of Ms. Hunsaker and concluded that her limitations would not preclude the performance of substantial gainful activity, an opinion which was inconsistent with the examining physicians. [*Id.* at 26].

As Plaintiff acknowledges, the difference between the treating physicians' opinions and those of the consulting physicians is the degree of severity of Ms. Hunsaker's degenerative disc disease. *See* [#12 at 21]. Yet the degree of severity and the limitations upon a person's functionality is at the core of the inquiry into whether a particular individual qualifies as disabled under the Social Security Act. Plaintiff argues that if the ALJ's reasoning in this case is accepted, then this essentially establishes a rule that a treating physician's opinion can never be given controlling weight where there is *any* amount of contradictory evidence in the record. [*Id.*]. The court respectfully disagrees. Here, the ALJ pointed to specific medical evidence in

9

the record and concluded that the "medical evidence [did] not suggest the types of abnormalities or ongoing treatment one would expect given [Plaintiff's] allegations of disabling symptoms, but rather show[ed] mild to moderate findings" [#9-2 at 25]. For instance, the ALJ points to Plaintiff's treating physician, Charles Ho, M.D., as having his changed his clinical finding from a herniated cervical disc (prior to review of x-rays) to "D.J.D."[2] to chronic neck pain (after reviewing the x-rays). [*Id.*]. The only treatment by Dr. Ho at that time was a prescription of Ultram and Mobic. [*Id.*]. As noted by the ALJ, as of September 21, 2004, there were no reported limitations on sitting or standing. [#9-8 at 288]. Plaintiff's treating physician precluded "heavy work, repetitive head movements, and use of either arm at shoulder level or above repetitively," but did not mention any limitations to Plaintiff's ability to sit or stand – issues that her counsel described as defining the "outcome of this case." [#9-2 at 25 (citing #9-8 at 288; #9-2 at 39)]. The ALJ's observation that there are few medical records between the time of the alleged onset of the disability in 2011 to the time of the hearing on March 12, 2013 also appears accurate. [#9-2 at 25]. A radiological exam of her spine performed on November 29, 2011 is described as "unremarkable." [#9-7 at 279]. By January 22, 2014, Ms. Hunsaker's objective findings indicate that she has "mild disc degenerative changes without evidence for nerve root impingement." [#9-9 at 381]. Having concluded that the substantial evidence in the record was inconsistent with the treating physicians' opinions about the severity of Ms. Hunsaker's condition, the ALJ's decision to not give controlling weight to the treating physicians' opinions was not in error. *Jones v. Colvin*, 610 F. App'x 755, 759 (10th Cir. 2015). Accordingly, reversal or remand on this issue is not appropriate.

---

[2] This court interprets "D.J.D." to refer to degenerative joint disease, which the ALJ has recognized as severe impairments for Plaintiff in step three. [#9-2 at 21].

Second, Plaintiff argues that the ALJ improperly discounted Dr. Schwartz's opinion because it was based in part on things that Ms. Hunsaker had told him. *See* [#12 at 23]. Dr. Steven Schwartz treated Ms. Hunsaker in 2003. *See* [#9-9 at 372]. Dr. Schwartz found that Ms. Hunsaker should be restricted from driving vehicles while working and that she should be precluded from using a computer on the job site for more than four hours per day and lifting in excess of five pounds. [#9-9 at 373]. The ALJ stated that he considered Dr. Schwartz's opinion and gave it less weight because it was given in 2003, well outside the relevant timeframe considering Plaintiff's alleged onset date of disability in May 2011. [#9-2 at 30]. The ALJ then noted that Dr. Schwartz's opinions are based in part on self-reporting by Ms. Hunsaker. *See* [#9-2 at 29].

The court finds that the ALJ's analysis is specifically tied to the evidence in record, and the ALJ's decision to give lesser weight to Dr. Schwartz's opinion because of how far it predated the alleged disability onset date was not inappropriate. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). To the extent that the ALJ also discounted Dr. Schwartz's opinion because it was based in part on Ms. Hunsaker's statements where the ALJ had also determined that Ms. Hunsaker lacked credibility, this is not grounds for reversing the ALJ's decision on the record before the court. *See Butler v. Astrue*, 410 F. App'x 137, 142-43 (10th Cir. 2011); *White v. Barnhart*, 287 F.3d 903, 907-08 (ALJ reasonably discounted a treating physician's opinion which was based on the claimant's subjective assertions rather than objective medical evidence). Moreover, as Defendant points out in its brief, Dr. Schwartz's opinion actually contains information that is *unfavorable* to Plaintiff in that Dr. Schwartz opined that Ms.

Hunsaker was not precluded from working, *see* [#9-9 at 373], an opinion which the ALJ noted "showed mild objective medical and clinical findings," and "did not support ongoing disabling limitations," [#9-2 at 29-30]. Accordingly, to the extent there was any error in the ALJ's weighing of Dr. Schwartz's opinion (which this court finds there was not), such an error would have been harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir. 2012) (no reversible error in weighing a medical source opinion which said that the claimant had "no limitation" or "no significant limitation" in every category relevant to work function "because giving greater weight to [the doctor's] opinion would not have helped her").

Third, Plaintiff argues that there are a number of other reasons the ALJ's comparative analysis was erroneous, including because Plaintiff argues that the ALJ erred by failing to consider other relevant factors, including the length of time that doctors had treated Ms. Hunsaker, in determining the relative weight to give their opinions and placing too much weight on the medical providers' familiarity with the Social Security regulations. *See* [#12 at 23]. However, Plaintiff's arguments on these other reasons are so cursory and not tied to the record or the ALJ's opinion that this court will not pass on them. "Because Plaintiff fails to provide the required legal argument, the Court will not consider [these] issues." *Welch v. Colvin*, No. 15-CV-00517-CMA, 2016 WL 106871, at *7 (D. Colo. Jan. 11, 2016) (citing *Keyes-Zachary*, 695 F.3d at 1161 ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of . . . review . . . is limited to the issues the claimant . . . adequately presents on appeal.").

## II.   Plaintiff's Challenge of the ALJ's Determination Regarding Ms. Hunsaker's Credibility

Plaintiff's next argument is that the ALJ erred by making a determination regarding Ms. Hunsaker's credibility "that is based upon factual misinterpretation and improper and irrelevant factors." [#12 at 24]. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citation, brackets, and internal quotation marks omitted). "In assessing credibility, an ALJ may consider factors including the frequency of medical contacts, daily activities, extensiveness of attempts to obtain relief, subjective measures of credibility, and the consistency and compatibility of the nonmedical evidence with the medical." *Fessler v. Apfel*, 11 F. Supp. 2d 1244, 1251 (D. Colo. 1998) (citing *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).

The ALJ found that inconsistencies between Ms. Hunsaker's conduct and her assertions affected her credibility as a witness in this case. [#9-2 at 24]. Inconsistencies between Ms. Hunsaker's conduct and her assertions that the ALJ noted include that she had the auto accident that purportedly caused her injury in 2001 yet worked full time for many years after that, and in fact, did not claim to be disabled until a decade later. [*Id.*]. The ALJ also noted that although she alleges disabling limitations and pain, she still said she enjoyed gardening, cared for her incontinent father without outside help, did the laundry, cleaned the kitchen, gardened, drove, shopped for groceries, paid bills, and used a computer. [*Id.*]. The ALJ also noted that Ms. Hunsaker controls her pain with Advil or Aleve, though she sometime uses Vicodin. [*Id.*]. The

ALJ further noted that Ms. Hunsaker gave inconsistent evidence about the extent to which she has a limited ability to sit, walk, and stand. [*Id.*].  The ALJ stated that while he listed the different credibility factors, he did not consider any one factor to be controlling and instead considered the cumulative effects of all of the factors. [#9-2 at 24]. On the basis of the cumulative effects of all of the factors, the ALJ found that the evidence of Ms. Hunsaker is not fully credible. [#9-2 at 24].

Plaintiff argues that the ALJ erred by relying on evidence of Ms. Hunsaker's ability to perform household chores as a basis for undermining her testimony that she was unable to work. [#12 at 25]. Plaintiff alleges that that this was improper because it is well-established that the ability to do limited household chores including yard work, does not in itself support a determination that an individual is not disabled. [#12 at 25 (citing *Williams*, 844 F.2d at 759; *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983))]. To the contrary, the ALJ relied on Ms. Hunsaker's statements about her daily activities and the inconsistencies in her testimony about her ability to walk and sit as a basis for determining her credibility. *See Wagner v. Callahan*, 114 F.3d 1199, 1997 WL 303651, at *2 (10th Cir. 1997); *see also Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (claimant's "description of her daily activities [that] did not indicate significant limitations"—she could "care for herself, her home and her children[,]" and also "drive, shop, and handle finances," garden, visit friends, and go out to eat, supported ALJ's determination that claimant's "testimony of *disabling* pain was not credible"); *Huston*, 838 F.2d at 1132 ("[I]n determining the credibility of pain testimony" ALJ may consider "the nature of [claimant's] daily activities"). The household chores were not the sole basis for the ALJ's

credibility determination—he specifically stated that he relied on a culmination of factors, including her inconsistent statements about her ability to sit, walk, and stand.

Plaintiff next argues that the ALJ erred in its credibility determination when he discounted Ms. Hunsaker's credibility because of inconsistencies between Ms. Hunsaker's testimony at the hearing that she could sit 60-90 minutes and her statement in the Exertional Activities Questionnaire that she could only do so for about 20 minutes. [#12 at 25]. In particular, Plaintiff asserts that at the hearing, the ALJ asked Ms. Hunsaker how long she was *able to* sit, stand, and walk, while the Exertional Activities Questionnaire asked what Ms. Hunsaker *actually* did. [#12 at 25-26]. I find no error in the ALJ's assessment of the evidence before him regarding Ms. Hunsaker's statements about her ability to sit, stand and walk at the hearing and in the Exertional Activities Questionnaire. While, as Plaintiff points out, there are different possible interpretations of the meaning of the questions in the Questionnaire and the questions Ms. Hunsaker was asked at the hearing, the court will "not displace the agency's choice between two fairly conflicting views." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

The ALJ's credibility determination is "entitled to considerable deference," *James v. Chater*, 96 F.3d 1341, 1342 (10th Cir. 1996), and where, as here, the ALJ's credibility determination is supported by substantial evidence in the record, the court will not disturb its determination of Ms. Hunsaker's credibility. *See Wagner*, 1997 WL 303651, at *2; *see also Hill v. Barnhart*, 33 F. App'x 941, 943 (10th Cir. 2002) (accepting ALJ's credibility determination based on a number of specific findings, including findings relating to claimant's daily activities and hearing demeanor).

### III.  Plaintiff's Challenge Regarding the ALJ's Consideration of Pain and Other Non-Exertional Factors in Assigning a Residual Functional Capacity

Plaintiff argues that the ALJ insufficiently evaluated the objective and subjective evidence of Ms. Hunsaker's pain and also failed to consider the non-exertional factors of the need to take time during the normal work week to seek medical treatment and to change positions during the work day in assessing her RFC.  [#12 at 28].

In evaluating a claimant's evidence of pain, this court is guided by the factors set out in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987).  The court considers "(1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)).

Plaintiff argues that the ALJ erred in making few findings regarding the *Luna* factors and failing to address the *Luna* factors with more specificity.  [#12 at 27-28].  The court respectfully disagrees.  The ALJ clearly found that Ms. Hunsaker had established the severe impairments of degenerative cervical disc disease and lumbar disc disease.  *See* [#9-2 at 21].  The ALJ then evaluated the connection between these impairments and Ms. Hunsaker's complaints of pain and considered whether all of the evidence, including Ms. Hunsaker's allegations of pain and the medical record evidence established that the pain did, in fact, cause her to be disabled.  The ALJ acknowledged that Ms. Hunsaker claims she is disabled due to neck and back pain.  *See* [#9-2 at 23].  He addressed her statements in the record about the extent to which the pain keeps her from performing work-related activities and day-to-day functions such as emptying the dishwasher

and walking around the block, as well as the fact that she generally only takes over-the-counter medications to control her pain. *See* [*id.*]; *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (The court should consider "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.").

The ALJ also noted that there was "sparse" medical evidence from the alleged onset date to the date of the hearing, [#9-2 at 25]. *See Luna*, 834 F.2d at 165 (one factor for the ALJ to consider in assessing a claimant's credibility is her "persistent attempts to find relief for [her pain] and [her] willingness to try any treatment prescribed"). However, the ALJ determined that Ms. Hunsaker's statements were not fully credible because she engaged in day-to-day activities that were inconsistent with her claims of disabling pain, including caring for her father, who is incontinent, doing laundry, cleaning the kitchen, gardening, driving, shopping for groceries, paying bills, and using the computer. [*Id.* at 24]. The ALJ also noted Ms. Hunsaker's inconsistent statements about her ability to sit, stand, and walk. [*Id.*]. The ALJ then considered the medical evidence in the record and reached the conclusion that the medical evidence "does not suggest the type of abnormalities or ongoing treatment one would expect given the allegations of debilitating symptoms, but rather shows mild to moderate findings that do not support the claimant's allegations of disabling limitations." [*Id.* at 25].

This court finds that the ALJ performed a proper analysis of Ms. Hunsaker's claim of disabling pain, and the court will not disrupt that finding, supported by substantial evidence, on the basis of Plaintiff's cursory argument which is unsupported by any specific allegations of evidence in the record which Plaintiff thinks should have been considered, but was not.

Plaintiff's last argument is that the record established the presence of other non-exertional factors (in particular, the need to take time during the normal work week to seek medical treatment and the need to change positions during the work day) that the ALJ did not consider in determining her RFC. [#12 at 28]. Again, Plaintiff cites no evidence in the record for the proposition that she must take time during the normal work week for medical appointments beyond what would ordinarily be allowed by an employer. [*Id.*]. Nor does Plaintiff point to specific evidence in the record which the ALJ purportedly failed to consider regarding Ms. Hunsaker's need to change positions during the work day. [*Id.*]. In addition, the frequency of her medical visits reflected in the documentation does not suggest such limitations. This court will not engage in a fishing expedition into the record to piece together Plaintiff's arguments where Plaintiff has not provided the relevant information to the court in her brief. *Welch*, 2016 WL 106871, at *7 (citing *Keyes-Zachary*, 695 F.3d at 1161 ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Chambers*, 389 F.3d at 1142 ("The scope of . . . review . . . is limited to the issues the claimant . . . adequately presents on appeal."). The court also notes on this point that the ALJ specifically found in its RFC that Ms. Hunsaker can stand/walk 4 hours in an 8-hour workday and sit 6-8 hours in an 8 hour workday. [#9-2 at 23]. This finding acknowledges that Ms. Hunsaker would need to change positions

during the workday. Accordingly, the court does not find that Plaintiff's last argument, as presented to the court, is a proper basis for reversing the ALJ's decision.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Ms. Hunsaker was not disabled within the meaning of Titles II and XVI of the Social Security Act and therefore not eligible to receive Disability Insurance Benefits or Supplemental Security Income benefits. Accordingly, **IT IS ORDERED** that the Commissioner's final decision is **AFFIRMED** and this civil action is **DISMISSED**, with each party to bear its own fees and costs.

DATED: March 4, 2016                                BY THE COURT:

                                                                            s/Nina Y. Wang_____
                                                                            United States Magistrate Judge